# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

CASE NO.: _____

ENDURANCE AMERICAN SPECIALTY
INSURANCE COMPANY, a Delaware
Corporation,

      Plaintiff,

v.

RENTAL INSURANCE SERVICES, INC., a
Missouri Corporation,

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Endurance American Specialty Insurance Company ("Endurance"), by and through its undersigned counsel, and pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, hereby files this Complaint for Declaratory Judgment against Defendant, Rental Insurance Services, Inc. ("RIS"), and states as follows:

## INTRODUCTION

1.     In this action, Endurance seeks a declaration that it does not owe a duty to indemnify RIS in connection with RIS's claim handling of a lawsuit captioned *Jessica L. Matlin and Matthew Ralys v. Ricardo R. Sanchez de Movellan*, Case No. 1:17-cv-23483-JLK, in the United States District Court for the Southern District of Florida (the "Underlying Action").

2.     As discussed in greater detail below, the Underlying Action arose out of a motor vehicle accident involving a pedestrian, Jessica Matlin, and the driver of a rented motor vehicle, Ricardo R. Sanchez de Movellan.

3.      Endurance issued a Premier Insurance Professionals Liability Insurance Policy to The Crawford Group Inc. ("Crawford Group") and its Subsidiaries for the policy period of March 1, 2019 to March 1, 2020, with limits of $10 Million per claim and in the aggregate, subject to a self-insured retention of $500,000 (the "Policy"). RIS is a subsidiary of the Crawford Group and, thus, an insured under the Policy.

4.      There is a justiciable controversy relating to the rights and obligations of the parties under the Policy. RIS contends that Endurance is required to indemnify it with respect to amounts RIS contributed to the settlement of the Underlying Action while Endurance contends, for the reasons discussed below, that it does not owe a duty to indemnify RIS for those payments.

## THE PARTIES

5.      The Plaintiff, Endurance, is a Delaware corporation with its principal place of business in New York. Endurance is therefore a citizen of Delaware and New York.

6.      The Defendant, RIS, is a Missouri corporation with its principal place of business in Missouri. RIS is therefore a citizen of Missouri.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1) because there is complete diversity of citizenship between the Plaintiff and the Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      This Court has personal jurisdiction over the Defendant because the Defendant is a resident of, or conducts substantial business in, Florida.

9.      Venue is proper in the United States District Court of the Southern District of Florida pursuant to 28 U.S.C. § 1391 because the events giving rise to the claim at issue occurred within this District.

10.     Pursuant to Local Rule 3.1, this matter is properly instituted in the Miami Division of the Southern District of Florida, as Miami-Dade County has the greatest nexus with this case.

## THE UNDERLYING ACTION

11.     On July 11, 2017, Jessica Matlin ("Ms. Matlin") and Matthew Ralys ("Mr. Ralys") filed a complaint against Ricardo R. Sanchez de Movellan ("Mr. Ramos") in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida (the "Underlying Action"). A true and correct copy of the complaint is attached hereto as Exhibit A.

12.     The Underlying Action arose out of a motor vehicle accident involving a pedestrian, Ms. Matlin, and the operator of a motor vehicle rented from Enterprise Rent-A-Car, Mr. Ramos. According to the complaint, Ms. Matlin was walking on the sidewalk in Miami Beach, Florida, when she stopped at the intersection of Euclid Avenue and 6th Street, waiting for an oncoming vehicle to yield the right-of-way. Ex. A. at ¶ 8-9.

13.     Mr. Ramos, who was operating the oncoming vehicle, stopped at the intersection of Euclid Avenue and 6th Street, allowing Ms. Matlin to cross the street within the designated crosswalk. Ex. A. at ¶ 10-11. However, while Ms. Matlin was crossing the street, Mr. Ramos accelerated his vehicle into the intersection to make a left turn and, in doing so, he accidentally struck Ms. Matlin with his vehicle. Ex. A. at ¶ 12-13.

14.     The police officers responding to the scene issued Mr. Ramos a traffic citation for failing to yield the right-of-way to Ms. Matlin as a pedestrian in the crosswalk. Ms. Matlin suffered multiple injuries as a result of the incident. Ex. A. at ¶ 14-15.

KAPLAN ZEENA LLP
2 South Biscayne Boulevard, Suite 3050, Miami, Florida 33131
Tel: (305) 530-0800 Fax: (305) 530-0801

15.     Enterprise Rent-A-Car obtained an insurance policy for the vehicle rented by Mr. Ramos from ACE American Insurance Company ("ACE"). The Underlying Action was tendered to ACE for defense and indemnity under this policy. Enterprise Rent-A-Car also arranged for any claim made under this policy to be handled by RIS which, upon information and belief, is an affiliate of Enterprise Rent-A-Car.

16.     On September 21, 2017, Mr. Ramos's defense counsel removed the Underlying Action from the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida, to the United States District Court for the Southern District of Florida, Miami Division.

17.     On January 4, 2019, Ms. Matlin's attorney emailed RIS a demand letter that accused RIS of acting in bad faith in failing to timely resolve the Underlying Action (the "Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as Exhibit B.

18.     The Demand Letter stated in pertinent part that RIS's claim handling:

[H]as run afoul of Florida's law on bad faith . . . As your file will reflect, I have made multiple attempts to settle this matter within the insurance policy limits. I first wrote to you on May 1, 2017, and enclosed substantial documentation supporting my clients' claims. I sent you additional documentary support on May 16, 2017, even though you had not requested it or even responded to my original offer.

Finally, I provided updated medial and billing records on May 31, 2017. It was not until August 25, 2017, that you made a completely inadequate and insulting offer of $150,00, which we of course declined. You never offered the policy limits (or anywhere near) until after hours of mediation on December 7, 2018. Even worse, you completely failed to relay our repeated settlement attempts to Mr. Ramos, in blatant disregard of your duty of good faith . . .

ACE's decision to ignore its affirmative duties to try to settle this case in a timely manner and to keep its insured in the dark regarding settlement opportunities demonstrate its obvious bad faith. With Mr. Ramos's liability being clear, there is no excuse for his insurer not to have actively sought to protect his interests by immediately settling my clients' claims.

19.     On April 11, 2019, RIS reported the Claim to Endurance via email stating that this email "shall constitute first notice of claim" under the Policy. Four days later, on April 15, 2019,

RIS informed Endurance via email that a mediation would be held the following day, on April 16, 2019, in the Underlying Action.

20.     The following week, on April 23, 2019, the Underlying Action was resolved under the terms of a confidential settlement agreement and release executed by Ms. Matlin and Mr. Ralys. Upon information and belief, RIS made a significant payment to Ms. Matlin and Mr. Ralys in order to resolve the Claim made against it for bad faith claim handling in the Underlying Action.

21.     As a result of the payment made by RIS in the Underlying Action, RIS seeks reimbursement from Endurance under the Policy in an amount in excess of this Court's jurisdictional minimum of $75,000, exclusive of interest and costs.

## THE INSURANCE APPLICATION

22.     The Crawford Group and its Subsidiaries submitted an Application for Miscellaneous Professional Liability Insurance to Endurance on February 24, 2019 (the "Application"). The Application was signed by Christine Taylor as President. A true and correct copy of the Application is attached hereto as Exhibit C.

23.     Page 2 of the Application asked RIS about any prior activities. Specifically, the Application asked:

> 9. Prior Activities:
> . . .
>
> b)   No claims have been made against any persons or entity(s) proposed for this insurance in their capacity as a director or officer of the Applicant, except as follows (provide detail as to defense costs, settlements, judgments, or other amounts). If answer is "none" so state:
>
>       Answer: None.
>
> c)   No persons or entity(s) proposed for this insurance is cognizant of any fact, circumstance or situation which they have reason to suppose might afford grounds for any claim such as would fall within the scope of the proposed insurance, except as follows. If answer is "none," so state:

Answer: None

**Without prejudice to any other rights and remedies of the Insurer, any claim arising from any claims, facts, circumstances or situations disclosed or required to be disclosed in response to 9. b) and 9. c) is excluded from the proposed insurance.**

24.     Page 3 of the Application further stated that:

**THE INFORMATION CONTAINED AND SUBMITTED WITH THIS APPLICATION IS ON FILE WITH THE INSURER AND, ALONG WITH THE APPLICATION, IS CONSIDERED TO BE PHYSICALLY ATTACHED TO THE POLICY AND WILL BECOME PART OF THE POLICY IF ISSUED.**

25.     In reliance upon the answers and representations provided by RIS in the Application, Endurance issued the Policy.

## THE INSURANCE POLICY

26.     Endurance issued a Premier Insurance Professionals Liability Insurance Policy to Crawford Group and its Subsidiaries for the policy period of March 1, 2019 to March 1, 2020, with limits of $10 Million per claim and in the aggregate, subject to a self-insured retention of $500,000 per claim. RIS is a subsidiary of Crawford Group, and, thus, an insured under the Policy. A true and correct copy of the Policy is attached hereto as Exhibit D.

27.     The Policy contains an insuring agreement that provides, in relevant part, as follows:

**I.     INSURING AGREEMENTS**

A.     The **Insurer** shall pay **Damages** and **Claim Expenses** on behalf of the **Insured** resulting from any **Claim** first made against the **Insured** and reported to the **Insurer** in writing during the **Policy Period**, or any applicable Extended Reporting Period for any **Wrongful Act** committed on or after the **Retroactive Date** and before the Policy terminates.
. . .

**Defense and Settlement**. The **Insured** and not the **Insurer** has the duty to defend any **Claim** covered under this Policy.

. . .

The **Insurer** shall have the right and shall be given the opportunity to effectively associate with the **Insured** in the investigation, defense, and settlement of any **Claim**.

The **Insured** shall not settle or offer to settle any **Claim**, incur **any Claim Expenses**, admit any liability, stipulate to any judgment, or otherwise assume any obligation with respect to any **Claim** that is covered or is reasonably likely to be covered, in whole or in part, by this Policy without the **Insurer's** prior written consent, which shall not be unreasonably withheld. The **Insurer** shall not be liable for any **Damages** as a result of any offer to settle, settlement, assumed obligation, admission of liability, stipulated judgment or **Claim Expenses** to which the **Insurer** has not consented. However, if the **Insured** is able to fully and finally settle, with prejudice, a **Claim** for an aggregate amount of **Damages** and **Claim Expenses** that does not exceed the self-insured retention applicable to such **Claim**, then the **Insurer's** consent shall not be required for the settlement of such **Claim**.

*See* Ex. D, Policy Form IAB 0244 0615, Endorsement Form IL 1001 0712.

28.     The Policy defines "**Application**" to mean:

[A]ll signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insured** to the **Insurer** for this Policy or for any policy of which this Policy is a direct or indirect renewal or replacement. **Application** shall also include all documents provided by the **Insured** to the **Insurer** in connection with the underwriting or issuance of this Policy and any information contained on the **Website(s)** of the **Insured**, whether provided to the **Insurer** directly or indirectly through the use of public databases or similar sources.

*See* Ex. D, Policy Form IAB 0244 0615.

29.     The Policy defines a "**Claim**" in relevant part as:

"**Claim**" means a demand received by the **Insured** for money or services and alleging a **Wrongful Act**, including:

1.      the service of suit or any civil proceeding in a court of law or equity, including any appeal therefrom, which is commenced by the filing of a complaint, motion for judgment, or similar proceeding;

      2.      institution of arbitration, mediation or other formal alternative dispute resolution proceeding.

*See* Ex. D, Policy Form IAB 0244 0615.

30.      The Policy defines "**Claim Expenses**" in relevant part as:

      1.      fees charged by any lawyer selected by the **Insured** with the written consent of the **Insurer**, which shall not be unreasonably withheld; and

      2.      all other reasonable fees, costs and expenses resulting from the investigation and defense of a **Claim**.

"**Claim Expenses**" shall not include salary charges of any employee or officer of the Insured.

*See* Ex. D, Policy Form IAB 0244 0615, Endorsement Form IL 1001 0712.

31.      The Policy defines "**Damages**" in relevant part as:

"Damages" means any compensatory sum and includes:

      1.      monetary judgments or settlements;

      2.      punitive or exemplary damages to the extent such damages are insurable under the law most favorable to the insurability of such damages of any jurisdiction which has a substantial relationship to the **Insured**, the **Insurer**, this Policy or the **Claim**; or

      3.      pre-judgment and post-judgment interest.

*See* Ex. D, Policy Form IAB 0244 0615.

32.      The Policy defines "**Insured**" to mean:

The **Named Insured**, any **Subsidiary**, any **Insured Person** and any of the following persons:

      1.      independent contractors, but only for **Professional Services** performed on behalf and at the direction of the **Named Insured** or any **Subsidiary**, and the **Named Insured** has agreed to provide insurance for the independent contractors' **Professional Services**;

2.     leased employees, but only for **Professional Services** performed while acting under the direct supervision and exclusively on behalf of the **Named Insured** or any **Subsidiary**.

*See* Ex. D, Policy Form IAB 0244 0615.

33.     The Policy defines an "**Insured Person**" to mean:

Any natural person who was, is or becomes a principal, partner, managing member, officer, director, employee or **Volunteer** of the **Named Insured** or **Subsidiary**, but only while in the performance of **Professional Services** on behalf of the **Named Insured** or **Subsidiary**. Coverage under this Policy shall also extend to:

1.     the lawful spouse or lawful domestic partner of an **Insured Person**, if named as a co-defendant with such **Insured Person** solely by reason of such spouse's status as a spouse or such domestic partner's status as a domestic partner, or such spouse's or domestic partner's ownership interest in property that is sought by a claimant as recovery for an alleged **Wrongful Act** of such **Insured Person**; and

2.     the estate, heirs, executors, administrators, assigns and legal representatives of any **Insured Person** in the event of the death, incapacity, insolvency or bankruptcy or such **Insured Person**;

*See* Ex. D, Policy Form IAB 0244 0615

34.     The Policy defines "**Professional Services,**" in relevant part, as:

a.     Providing insurance and claims adjusting professional services in the capacity as:

    i.     car rental employees, fleet management employees, insurance agents and claims adjusters;
    ii.     Insurance Agent professional services including limited license agents;
    iii.     Insurance Broker professional services;
    iv.     Insurance Wholesaler professional services;
    v.     Insurance Surplus Lines Broker professional services;
    vi.     Notary Public professional services;
    vii.     Managing General Agent;
    viii.     Insurance Consultant

b.     Vanpool Program Services.

*See* Ex. D, Policy Form IAB 0244 0615, Endorsement Form MEO 0301 1012.

35.     The Policy defines "**Wrongful Act**," in relevant part, as:

Any actual or alleged act, error or omission committed or attempted solely in the performance of or failure to perform **Professional Services** by an **Insured** or by any other person for whose acts the **Named Insured** is legally liable, including but not limited to:

1.      Personal and Advertising Injury;
. . .
4.      Infringement of Intellectual Property Rights.

*See* Ex. D, Policy Form IAB 0244 0615, Endorsement Form: IL 1001 0712.

36.     The Policy contains an exclusion to insurance coverage that provides, in relevant part, as follows:

**III.   EXCLUSIONS**

This Policy shall not apply:

. . .

V.      to any **Claim** for **Damages** arising out of any **Insured's** intentional refusal to pay or any intentional delay in paying any claim or obligation arising out of an insurance or benefit contract or plan. However, this exclusion shall not apply to **Claims Expenses** for such **Claim** that is otherwise covered by the Policy.

Severability of Exclusions:

With respect to Exclusions III.A. and III.V. of this Policy, it is understood and agreed that the knowledge or **Wrongful Acts** of an **Insured Person** shall not be imputed to any other **Insured Person** to determine if coverage is available and only the knowledge of **Wrongful Acts** of the executive officers, risk manager, in-house general counsel, or their functional equivalent of such positions of the **Named Insured** or a **Subsidiary** shall be imputed to such **Insured** and its **Subsidiaries**.

*See* Ex. D, Policy Form IAB 0244 0615, Endorsement Form IL 1001 0712.

37.     The Policy contains certain procedures for reporting claims and cooperating with the insurer that provide, in relevant part, as follows:

### VI.   CLAIMS

A.   **Notice of Claims**. As a condition precedent to coverage under this Policy, the **Insured** shall provide the **Insurer** written notice of any **Claim** made against any **Insured** as soon as practicable after any of the **Named Insured's** executive officers, risk manager, in-house general counsel, or their functional equivalent becomes aware of such **Claim**, but in no event later than: (i) the expiration date of the **Policy Period**; (ii) sixty (60) days after the expiration date of the **Policy Period** with respect to **Claims** first made against the **Insured** within thirty (30) days prior to the expiration of the **Policy Period**; (iii) the end of the Automatic Extended Reporting Period, if applicable; or (iv) the end of the Optional Extended Reporting Period with respect to Claims first made during the Optional Extended Reporting Period, if applicable.
. . .

B.   **Discovery Clause**. If during the **Policy Period** any of the **Named Insured's** executive officers, risk manager, in-house general counsel, or their functional equivalent first becomes aware of, or has reasonable grounds to suspect that an **Insured** has committed or may have committed, a specific **Wrongful Act** for which coverage is otherwise provided hereunder, and provided the Insured during the **Policy Period** gives notice to the **Insurer** of:

   1. the specific **Wrongful Act**;

   2. the injury or damage which has resulted or may result from such **Wrongful Act**; and

   3. the circumstances by which the **Insured** first became aware of or suspected such **Wrongful Act**;

   then any **Claim** that may subsequently be made against any **Insured** arising out of such **Wrongful Act** shall be deemed for the purposes of this insurance to have been made during the **Policy Period**.

*See* Ex. D, Policy Form IAB 0244 0615, Endorsement Form IL 1001 0712.

38.   The Policy contains certain conditions for coverage under the Policy based upon the representations made by the insureds, in relevant part, as follows:

### VIII.   CONDITIONS
. . .

      C.     **Representations and Severability**. In issuing this Policy, the **Insurer** has relied upon the statements, representations and information contained in the **Application**. Every **Insured** acknowledges and agrees that all such statements, representations and information (i) are true and accurate, (ii) were made or provided in order to induce the **Insurer** to issue this Policy, and (iii) are material to the **Insurer's** acceptance of the risk to which this Policy applies. . .

*See* Ex. D, Policy Form IAB 0244 0615.

39.     On June 13, 2019, Endurance issued a reservation of rights letter to RIS. In the reservation of rights letter, Endurance reserved all of its rights and remedies under the Policy, including the right to seek a declaratory judgment defining its obligations under the Policy; to withdraw any defense provided on behalf of RIS, and to rescind the Policy

<u>**COUNT I: CLAIM FOR DECLARATORY JUDGMENT**</u>
**(No Duty to Indemnify)**

40.     Endurance adopts and re-alleges the allegations contained in paragraphs 1 through 39 as though fully set forth herein.

41.     An actual, justiciable controversy has arisen over whether the Policy issued by Endurance provides coverage for the claim of bad faith claim handling made by Ms. Matlin and Mr. Ralys against RIS in the Underlying Action.

42.     Endurance believes that the Policy does not provide coverage for the Claim alleged against RIS in the Underlying Action for several reasons:

(a)     On January 4, 2019, RIS received the Demand Letter, which contained a demand for Damages and alleged a Wrongful Act in the rendering of Professional Services (i.e., bad faith claim handling). The Demand Letter constituted a Claim that was first made against RIS prior to the inception date of the Policy and, thus, the Claim does not trigger the insuring clause of the Policy as the Claim was not first made during the Policy Period. (Ex. D, Section I – Insuring Agreements).

(b)     The Policy requires as a condition precedent to coverage that the Insured shall provide written notice of any Claim made against the Insured as soon as practicable. A "Claim" as defined under the Policy was first made against RIS no later than January 4, 2019 upon its receipt of the Demand Letter – at least three (3) months prior to RIS reporting the Claim to Endurance and, thus, the Claim was not reported by RIS as soon as practicable under the Policy. (Ex. D, Section VI – Claims).

(c)     The Policy excludes coverage arising out of an Insured's failure to pay or any intentional delay in paying any claim arising out of an insurance contract. The knowledge of RIS's executive officers, risk managers, in-house general counsel, and their functional equivalent are imputed to RIS. The Claim made by Ms. Matlin and Mr. Ralys arises out of RIS's alleged failure to timely pay the claim in the Underlying Action. The Claim is therefore excluded from coverage under the Policy to the extent that RIS's executive officers, risk managers, in-house general counsel, or their functional equivalent were aware of this matter prior to the date the Claim was first made against RIS. (Ex. D, Section III – Exclusion V).

(d)     The Application submitted to Endurance, which is deemed attached to, and incorporated in, the Policy excludes coverage for any claim arising from any facts, circumstances or situations disclosed or required to be disclosed in response to questions 9(b) and 9(c) of the Application. RIS did not disclose (and should have disclosed) the existence of the Demand Letter – which RIS received two (2) months prior to its execution of the Application – in response to questions 9(b) and 9(c) of the Application and, thus, the Claim is excluded from coverage under the Policy. (Ex. C, Page 3).

(e)     The Policy requires that the Insured shall not settle any claim, make any payment, or assume any obligation without the Insurer's prior written consent (unless such actions can be

accomplished by the Insured within its self-insured retention for each claim). RIS made a settlement payment and settled the Underlying Action without Endurance's prior written consent in excess of its self-insured retention and, thus, the Claim is excluded from coverage under the Policy. (Ex. D, Section I – Insuring Agreements).

43.    Accordingly, Endurance is not obligated to indemnify RIS with respect to the settlement payment made by or on behalf of RIS in the Underlying Action.

44.    There exists a bona fide actual, present and practical need for a declaration regarding coverage under the Policy and the rights and obligations of Endurance.

45.    The rights and obligations of Endurance under the Policy are dependent upon the facts and the law applicable to the facts affecting coverage under the Policy.

46.    Endurance and RIS have an actual, present controversy in the subject matter described herein.

**WHEREFORE**, Plaintiff, Endurance American Specialty Insurance Company, respectfully requests that this Court enter judgment in its favor and: (a) declare that Endurance has no obligation to indemnify RIS under the Policy as a result of the payment made by RIS to Ms. Matlin and Mr. Ralys in the Underlying Action; and (b) grant such other relief as the Court may deem just, proper and equitable under the circumstances.

DATED this 15th day of August, 2019.

Respectfully submitted,

**KAPLAN ZEENA LLP**
*Attorneys for Plaintiff, Endurance*
*American Specialty Insurance Company*
2 South Biscayne Blvd.
Suite 3050
Miami, Florida 33131
Telephone: (305) 530-0800
Facsimile: (305) 530-0801

By: /s/*James M. Kaplan*
      JAMES M. KAPLAN
      Florida Bar No.:921040
      james.kaplan@kaplanzeena.com
      elizabeth.salom@kaplanzeena.com
      DANIEL HIRSCHMAN
      Florida Bar No.: 44177
      daniel.hirschman@kaplanzeena.com
      carmen.stewart@kaplanzeena.com